IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN HERD and GLORIA HERD, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-4284-CV-C-NKL |
| ) | |
| AMERICAN SECURITY INS. CO., ) | |
| ) | |
| Defendant. ) | |

ORDER

Plaintiffs John and Gloria Herd (the "Herds") sued Defendant American Security Insurance Co. ("ASIC") for failing to pay their claim under a forced-place insurance policy after fire destroyed their home. ASIC responds that the Herd's already had insurance on their property; thus, there is no coverage under the ASIC policy. The parties have filed cross-motions for summary judgment [Docs. # 110 and # 134], which this Court now grants in favor of ASIC.

I.  **Factual Background**

Many of these facts have already been stated in this Court's previous summary judgment order and remain undisputed. *See Herd v. Am. Sec. Ins. Co.*, 501 F. Supp. 2d 1240, 1241-44 (W.D. Mo. 2007). At some point prior to 2006, the Herds refinanced the mortgage on their home with non-party Bear Sterns Mortgage Co. The new loan was then transferred to non-party EMC Mortgage Co. ("EMC") who believed that the Herds had no insurance

1

coverage on their home as required by the terms of their mortgage. Fearing for its security interest in the house, about $355,200 still owing on the mortgage, EMC notified the Herds of its concern by letter dated April 3, 2006, warning that if the Herds did not provide proof of insurance, EMC would obtain insurance at the Herds' expense. This letter evidently went unanswered, and EMC notified the Herds by a second letter dated May 1, 2006, that it had purchased a 60-day binder of dwelling insurance, or "forced placed coverage," from ASIC and listed the Herds as "additional insureds." The letter also notified the Herds that the forced placed policy could be canceled at any time if the Herds provided proof of their own insurance; but it also warned that if the Herds did not provide such proof before the 60 day period expired, EMC would obtain an annual forced-placed coverage policy, the premiums of which would be added to the Herd's mortgage payments. Again the letter went unanswered and on June 29, EMC sent the Herds a third letter informing them that their house was now insured by ASIC for the following year and that the premiums were being charged to them. EMC noted that the insurance covered only the dwelling and not the Herd's personal property, and that the premiums were likely higher than those the Herds could obtain for themselves because the house had been insured without inspection. Nonetheless, the letter informed the Herds that they could still purchase their own insurance and provide proof thereof to EMC, which would automatically cancel the forced place coverage and eliminate further premiums. The Herds never responded and admit that there is a disputed issue of fact whether EMC's letters were properly addressed to them.

2

On August 4, 2006, the Herds' house was completely destroyed by fire. At the time, the Herds had two other insurance policies covering their home. The Herds collected on both these policies (totaling approximately $713,300 for the loss of their dwelling), which paid the balance on their mortgage to EMC. EMC did not make a claim on the forced-place policy because its security interest had been covered by the Herds' insurance. When the Herds confirmed the existence of the ASIC policy and that they were named as additional insureds, they notified ASIC that the home was a total loss and demanded payment on the policy.

The ASIC policy contains the following pertinent language. Under the subheading "CONDITIONS," the policy provides:

> 2. Other Insurance. If there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.
> . . .
>
> 18. Cancellation.
>
>    a. Coverage under this policy shall automatically and without prior notice cancel. . . when the Named Insured has been provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement applicable to the Described Property."

The Herds signed an Escrow Waiver Agreement in conjunction with their mortgage, which contains the following language:

> We, the undersigned, do in consideration for the waiver of the escrow requirements outlined in our Deed of Trust/Mortgage dated 01/23/06 agree to pay all tax assessments, ground rents, and homeowners associated fees, if any, to avoid items which may be placed on the above referenced property for non-

3

payment. Also, we will maintain sufficient insurance coverage to protect said property from any casualty loss which may occur to the premises.

Proof of payment must be submitted promptly by copy of tax receipts or premium receipts to

>EMC Mortgage Corporation
>Its successors and/or assigns
>P.O. Box 7589
>Springfield, OH 45501-7589

within 30 days from the date due.

If proof of payment is not provided, we understand that EMC Mortgage Corporation may establish an escrow account for payment of tax assessments and insurance premiums to protect its security in the referenced mortgaged property in accordance with the Deed of Trust/Mortgage

[Doc. # 39 at 3]. It is undisputed that the Herds did not provide EMC with proof of payment of any homeowners' insurance in the form of premium receipts despite the multiple letters EMC sent to the Herds requesting such proof, all of which went unanswered. There is a dispute about whether the Herds actually received the letters.

On August 31, 2006, the Herds demanded payment on the ASIC policy. ASIC denied the claim on October 3, 2006. EMC's mortgage was paid in full on November 13, 2006, from the proceeds of the Herds' other insurance policies. EMC subsequently released the Deed of Trust to the Herds and the Herds filed the present lawsuit against ASIC.

**II.  Discussion**

    **A.  Mutual Mistake**

        *1.  The Herds' motion to strike affidavits.*

4

ASIC contends that the forced place insurance policy was issued as a result of a mistake between it and EMC. ASIC supports its claim with affidavits by Elaine Modrell, a resolution analyst for EMC, and Johanna D'Arpa, claims manager for ASIC. The Herds oppose the use of these affidavits, including motions to strike in both their Suggestions in Opposition to ASIC's summary judgment motion, as well as in the reply brief in support of their own summary judgment motion. The Herds have five objections to Modrell's affidavit: (1) it is not admissible because she was not disclosed as a witness as required by Federal Rules of Civil Procedure 26(a)(1) and 26(e); (2) a sworn or certified copy of the file was not attached to the affidavit as required by Rule 56(e)(1); (3) the affidavit fails to establish Modrell's competency to testify; (4) the affidavit is based upon hearsay; (5) the affidavit contains legal conclusions. The Herds also object to D'Arpa's affidavit because it contains legal conclusions.

As to their first objection, the Herds themselves identified EMC's representative in their Rule 26 disclosures, and on November 28, 2007, ASIC sent the Herds notice of its intent to depose Modrell [Doc. # 124], although that notice was subsequently withdrawn. Thus, the Herds were put on notice that a representative from EMC might have information, and that EMC had designated Modrell as its representative. ASIC rightly notes that it was up to EMC to identify its representative, and that Plaintiffs could have requested the information from EMC themselves. As a result, the Herds can show no prejudice because any failure to disclose was harmless. *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (citing Fed. R. Civ. P. 37(c)(1)).

Similarly, the Herds complain that Modrell's affidavit states that it is based on her review of the loan file, but the loan file was not attached to the affidavit in violation of Federal Rule of Civil Procedure 56(e)(1). But all of these documents included in the loan file have already been produced in discovery; it is disingenuous for the Herds to now argue they "have no idea what information Modrell relied upon in forming the matters in her affidavit." The Herds do not object to any particular statement by Modrell based on a lack of foundation.

Next, the Herds argue that the affidavit is defective because other than stating she is a "resolution analyst," there is no information showing she is competent to testify regarding the loan. The Herds note that the affidavit does not explain what a resolution analyst does or what Modrell's specific involvement was in the case. Rule 56(e)(1) requires that an affidavit must "show that the affiant is competent to testify on the matters stated." The affidavit clearly shows that Modrell is competent to testify: She is employed by EMC and personally reviewed the Herds' loan file, which she did in her official capacity. This is more than enough to establish competence absent contradictory evidence.

Fourth, the Herds maintain that because Modrell stated she reviewed the Herds' loan file, her testimony is based on hearsay. Notably, the Herds do not cite which particular statements by Modrell are impermissible hearsay. Plaintiffs also argue that it is the loan documents that "contain the probative evidence as to whether a policy was issued based on mistake, not her filtered testimony as to what is in the documents." This is not true; under Missouri law, parol evidence may be used to contradict the terms of a contract where there

6

is a common mistake. *See C.L. Maddox, Inc. v. Benham Group, Inc.*, 88 F.3d 592, 599 (8th Cir. 1996) (citing *CIT Group/Sales Fin., Inc. v. Lark*, 906 S.W.2d 865, 868 (Mo. App. 1995)). Modrell's testimony, then, is probative and admissible as to whether there was a common mistake.

Finally, the Herds complain that the affidavits of Modrell and D'Arpa contain legal opinions. It is true that both affidavits state that the policy "was issued pursuant to a mistake," and to the extent this is a legal conclusion, those statements are inadmissible. However, as the Herds admit, the legal use of "mistake" is sometimes different than its use in common speech. *See* Restatement (Second) of Contracts § 151 cmt. a. Thus, to the extent that Modrell and D'Arpa used "mistake" in the common speech sense of the word, their statements are not inappropriate. Otherwise, Plaintiff's motion to strike the affidavits is denied.

### 2. *The Herds are third-party beneficiaries.*

An insurance policy is a contract. *See Porter v. Shelter Mut. Ins. Co.*, __ S.W.3d __, 2007 WL 2989000, at *5 (Mo. App. 2007). It is undisputed that EMC and ASIC were parties to the forced-place insurance policy. The Herds admit that they were not a party to the contract, or even knew about the policy until after the fire. Additionally, the Herds admit there was no privity between them and ASIC. Therefore, in order to have standing to enforce the policy, the Herds must be third-party beneficiaries. *See Goldring v. Franklin Equity Leasing Co.*, 195 S.W.3d 453, 456 (Mo. App. 2006) ("A third-party beneficiary is 'one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of

7

action for breach of the contract.'" (quoting *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. 1993))). The Herds were listed as "additional insureds" under the terms of the forced-place insurance policy. As a result, the terms of the policy clearly and directly express EMC and ASIC's intent for the Herds to benefit from the policy. *See Kester v. Kester*, 108 S.W.3d 213, 226 (Mo. App. 2003) (citing *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 260 (Mo. 2002)).

> 3. *The forced-place insurance policy is subject to the mutual mistake defense.*

Generally, a third-party beneficiary to a contract is subject to the same defenses as the original promisee. *See Robbins v. Prosser's Moving & Storage Co.*, 700 F.2d 433, 436 (8th Cir. 1983) ("The argument is based on traditional notions of third-party-beneficiary contract law: The third party seeking to enforce the agreement is bound by the terms of the contract and subject to the same defenses as the original promisee would be."). According to the Restatement (Second) of Contracts § 309: "[I]f a contract is voidable or unenforceable at the time of its formation the right of any beneficiary is subject to the infirmity." Thus, "if the contract is valid at law, but subject to some equitable defense, such as fraud, mistake, or failure of consideration, the defense may be alleged against the third person." 13 Williston on Contracts § 37:55 (4th ed. 2007).

ASIC asserts mutual mistake as an affirmative defense. Under Missouri law, "a mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Alea London Ltd. v. Bono-Soltysiak Enters.*, 186 S.W.3d 403, 415 (Mo. App. 2006) (quoting 27 Williston

8

on Contracts § 70:107). This means that "both parties did what neither intended to do." *Paul's Rod & Bearing, Ltd. v. Kelly*, 847 S.W.2d 68, 72 (Mo. App. 1991) (quoting *Heinze v. Hobson*, 622 S.W.2d 17, 18 (Mo. App. 1981)). "It is fundamental that the mistake relate to the existence or nonexistence of a fact, material to the agreement, and not as to a future contingency." *Shop 'N Save Warehouse Foods, Inc. v. Soffer*, 918 S.W.2d 851, 862 (Mo. App. 1996) (citing *Thies v. St. Louis County*, 402 S.W.2d 376, 381 (Mo. 1966)). In other words, a mutual mistake must be based on facts in existence at the time of the agreement. *See id.* at 863 (citing *Ludlow v. Ahrens*, 812 S.W.2d 245, 249 (Mo. App. 1991)). Further, under Missouri law, "it must appear that knowledge of the fact would have prevented the parties from executing the agreement." *Id.* at 862 (citing *Thies*, 402 S.W.2d at 381). "[W]hether the parties are laboring under a mutual mistake is normally a question of fact." *Brown v. Mickelson*, 220 S.W.3d 442, 448 (Mo. App. 2007).

In both their motion and their reply to ASIC's motion for summary judgment, the Herds do not seriously contest that EMC and ASIC believed the property was uninsured; instead, the Herds argue that this misunderstanding is not within the legal meaning of the term "mistake." Specifically, the Herds contend that EMC and ASIC's belief that the subject property was uninsured is not a "basic assumption" of the policy. This is a question of law appropriate for summary judgment. *See, e.g., Leading Edge Dev. Servs. v. enXco Inc.*, No. 05-3047, 2006 WL 3775898, at *10 (N.D. Iowa Dec. 21, 2006) (in deciding summary judgment, holding there was mutual mistake that was basic assumption of contract that had material effect on agreed exchange of performances); *see also Boston v. Sec. Fed. Sav. &*

9

*Loan Ass'n*, 691 F. Supp. 179, 181-82 (E.D. Mo. 1988) (granting summary judgment where plaintiff did not dispute mistake was made).

Here, it was a basic assumption of the forced-place insurance policy that the subject property was uninsured. The record reflects that after the Herds did not respond to several letters requesting information, both EMC and ASIC operated under the assumption that the Herds failed to acquire insurance on their property. The record also indicates that EMC and ASIC would not have issued the forced-place insurance policy if it had known the Herds had their own insurance. In fact, the very nature of a forced-place insurance policy suggests the basic assumption that the property was uninsured: "'Forced place' insurance is a policy purchased by a mortgagee . . . when the mortgagor's policy lapses for whatever reason." *Certain Underwriters at Lloyds, London v. Winestone*, 182 S.W.3d 342, 344 n.1 (Tenn. Ct. App. 2005). The purpose of forced-place insurance is to protect the mortgagee's interest in the property which is the subject of the mortgage. *See Charleswell v. Chase Manhattan Bank*, 223 F.R.D. 371, 374 n.1 (D.V.I. 2004). The Herds do not contest that this was a forced-place insurance policy. It follows, then, that EMC sought, and ASIC issued, insurance based on the assumption that EMC's interest in the Herd's property was at risk.

Moreover, the Herds' citation to an illustration in the Restatement supports ASIC's position:

> A contracts to sell and B to buy a tract of land, the value of which has depended mainly on the timber on it. Both A and B believe that the timber is still there, but in fact it has been destroyed by fire. The contract is voidable by B.

10

Restatement (Second) of Contracts § 152 cmt. b, illus. 1. Just like the assumption that a property has trees on it, here it was a basic assumption that there was no other insurance covering the property. Common sense also dictated that neither EMC nor ASIC intended to insure property that was already insured. It was not a matter of opinion or prophesy; it is a fact that at the time of the agreement, unknown to EMC and ASIC, there were two other insurance policies covering the Herds' property. The Herds cite no contrary caselaw, and the Court has found none.

Next, the Herds argue that the existence of other insurance contracts did not have a material effect on the agreed exchange of performances by EMC and ASIC. *See id.* §152 cmt. c. The Court has not found, and the Herds have not cited, any Missouri case using the phrase "material effect" in conjunction with a mutual mistake. *See, e.g., Thies*, 402 S.W.2d at 381; *Brown*, 220 S.W.3d at 448; *Alea London Ltd.*, 186 S.W.3d at 415; *Paul's Rod & Bearing*, 847 S.W.2d at 72. In fact, most Missouri cases only use "material effect" in reference to a unilateral mistake. *See, e.g., Nitro Distr., Inc. v. Dunn*, 194 S.W.3d 339, 349 (Mo. 2006); *Silver Dollar City, Inc. v. Kitsmiller Const. Co.*, 931 S.W.2d 909, 915 (Mo. App. 1996); *Sheinbein v. First Boston Corp.*, 670 S.W.2d 872, 877 (Mo. App. 1984); *see also Shurgard Storage Ctrs. v. Lipton-U. City, LLC*, 394 F.3d 1041, 1044 (8th Cir. 2005) (citing *Silver Dollar City*, 931 S.W.2d at 913-18; Restatement (Second) of Contracts § 153); *see also* 30 Mo. Practice § 1.16 (describing reformation due to mutual mistake and not mentioning material effect requirement); 35 Mo. Practice § 12:8 (listing mutual mistake as affirmative defense to contract, but not mentioning material effect requirement). Thus, it appears that

11

Missouri law does not require there be a material effect on the agreed exchange in mutual mistake cases.

Even if Missouri law contained such a requirement, in this case there was a material effect. The record indicates that all of the parties–EMC, ASIC and the Herds–would not have acquired the forced-place insurance had they known the material facts. In light of all the circumstances, the fact that both EMC and ASIC assumed the property was uninsured had a material effect on the agreed exchange. *See* Restatement (Second) of Contracts § 152 cmt. c.

### 3. *ASIC did not bear the risk of mistake.*

The Herds also claim that because EMC and ASIC entered into an "Outsourcing Agreement," ASIC bore the risk of the property already being insured. Although an exception for where the affected party "bears the risk of the mistake" is included in § 152 of the Restatement, it is not specifically mentioned in the Missouri caselaw cited above. In support, the Herds cite only one case, In re *Hysinger*, 785 S.W.2d 619 (Mo. App. 1990); however, that case describes the "bearing the risk" exception in the context of a unilateral mistake. *See id.* at 625; *see also Brown v. Fagan*, 71 Mo. 563 (Mo. 1880) (in unilateral mistake context, stating, "[c]onceding that the evidence shows that defendant was mistaken in putting the value of plaintiff's interest at a greater sum than it was worth . . . he cannot now be heard to set up his mistake to avoid the settlement or allege his ignorance of the true condition of his own affairs in order to escape liability"); *Barrett, Fitch, N. & Co. v. Hudson*, 403 S.W.2d 944, 947 (Mo. App. 1966) (discussing exception in unilateral mistake context).

Even if Missouri law does contain this exception to mutual mistakes, it is not applicable here. The Outsourcing Agreement between EMC and ASIC states:

> [ASIC] shall provide for [EMC] an automated service for the monitoring of Acceptable Insurance for Eligible Properties and the processing of Insurance Documents covering Mortgage Loans to determine whether Mortgagors have obtained and are continuing to maintain Acceptable Insurance as required.

The agreement also requires ASIC to monitor acceptable insurance coverage for all mortgage loans–accurately reported to ASIC–to ascertain the existence of acceptable insurance on mortgage loans. Under the terms of the agreement, ASIC is authorized to issue written notices to mortgagors reminding them of their obligation to maintain acceptable insurance.

Neither EMC nor ASIC (or even the Herds) argue that the Outsourcing Agreement has been breached. ASIC monitored EMC's files, which at the time the policy was entered into did not contain any information that the Herds' property was covered by two other policies. The policy's terms specifically state that ASIC is responsible for monitoring acceptable insurance coverage for all mortgage loans that are *accurately* reported to ASIC; here, the Herds, either because they willfully ignored the letters or because they never received them, did not notify EMC or ASIC that they had two insurance policies covering their property. As a result, it cannot be said that the mortgage loans were "accurately" reported to ASIC. Finally, the Outsourcing Agreement does not appear to require ASIC to do any investigation regarding the status of mortgagor's acceptable insurance apart from monitoring EMC's system. To the extent that the Outsourcing Agreement's Exhibit A requires ASIC to "provide Due Diligence support," this must be done only upon EMC's request. The Herds do not assert that EMC requested ASIC to provide Due Diligence

13

support. Thus, at the time EMC and ASIC signed the forced-place insurance policy, both parties assumed the Herds had not secured acceptable insurance for their property, and ASIC did not bear the risk of a mutual mistake. The existence of the Outsourcing Agreement does not convert EMC and ASIC's mutual mistake into a unilateral mistake.

### 4. *Adhesion contract does not preclude mutual mistake.*

The Herds also argue that mutual mistake is not a defense to an adhesion contract because there were no actual negotiations between EMC ans ASIC. Again, the Herds cite no caselaw for this proposition; they make general reference that "it is clear from the [Restatement's] illustrations that this defense will only apply when both parties have participated in the negotiation of the contract." The Herds point to no illustration in particular for support. To the contrary, Missouri law does not make negotiation of a contract a necessary prerequisite to finding a mutual mistake. In fact, "Missouri courts do not 'view adhesion contracts as inherently sinister and automatically unenforceable.'" *Midwest Div.-OPRMC, LLC v. Dep't of Soc. Servs., Div. of Med. Servs.*, 241 S.W.3d 371, 2007 WL 4385774, at *5 (Mo. App. 2007) (quoting *Hartland Computer Leasing Corp. v. Ins. Man, Inc.*, 770 S.W.2d 525, 527 (Mo. App. 1989)). "Rather, as with all contracts, the courts seek to enforce the *reasonable expectations of the parties* garnered not only from the words of a standardized form imposed by its proponent, but from the totality of the circumstances surrounding the transaction." *Id.* (emphasis added).

The Court sees no reason why mutual mistake is not a defense to an adhesion contract. In Missouri, adhesion contracts are not automatically unenforceable. Instead, courts seek to

14

enforce the reasonable expectations of the parties. The mutual mistake defense goes to the heart of the parties' reasonable expectations; there is no requirement that the parties must have actually negotiated a contract in order for a party to raise the defense of mutual mistake. The Court holds that the mutual mistake defense can be raised against contracts of adhesion if they are otherwise enforceable.

> 5. *Mutual mistake precludes recovery by the Herds.*

ASIC has returned to EMC all premiums paid under the policy. Any money the Herds may have paid was to EMC, not ASIC. Their claim for the premiums is against EMC not ASIC. Because there was a mutual mistake as to a basic assumption of the policy between EMC and ASIC, the Herds may not recover as third-party beneficiaries. All of the Herds' remaining arguments against mistake are inapplicable because they pertain to unilateral mistake. Summary judgment is granted for ASIC on all of Plaintiffs' claims based on its mutual mistake defense.

> **B.** **Unclean Hands**

On August 1, 2007, well after the deadline for amendments, ASIC requested leave to file an amended answer adding the defenses of unclean hands (Affirmative Defense 13) and misrepresentation under § 379.145, RSMo, and policy Condition 4 (Affirmative Defense 14). On September 7, 2007, the Court held a hearing on ASIC's motion to amend. The Court made clear that it was unlikely these defenses were supported by the facts of the case or the law. Defense counsel Van Ackeren insisted they were. The Court stated that it would "permit the defendant to amend its answer with the understanding that the Court may impose

15

sanctions if it turns out as a matter of law summary judgment will be entered against [ASIC] on the issue of unclean hands, concealment, misrepresentation or fraud." *See* Doc. # 78.

ASIC's unclean hands defense is based on its allegations that the Herds intentionally included an undeliverable mailing address on their mortgage application. Under Missouri law, "[t]he 'clean hands' doctrine does not bar a claim for money damages." *Union Elec. Co. v. Sw. Bell. Tel. L.P.*, 378 F.3d 781, 788 (8th Cir. 2004) (citing *Marvin E. Nieberg Real Estate Co. v. Taylor-Morley-Simon, Inc.*, 867 S.W.2d 618, 626 (Mo. App. 1993)). Like in *Union Electric*, the Herds' claimed right sounds in the insurance policy in which they are third-party beneficiaries. *See id*. The unclean hands defense is simply not available against the Herds' claims for money damages for breach of contract.

ASIC argues that the Herds' claims should be considered an equity action because EMC and ASIC, as the contracting parties, have already canceled and rescinded the policy. ASIC provides no support for its position, and this Court has found none. And as admitted by ASIC, the forced-place policy was not rescinded until *after* the fire destroyed the Herds' property. EMC and ASIC cannot avoid their obligations to the policy's third-party beneficiaries (in this case the Herds) once liability has attached. *See O'Hare v. Pursell*, 329 S.W.2d 614, 622 (Mo. 1959) ("The contract in question being one between two insurance companies for the benefit of third parties, viz., policyholders, the makers thereof cannot cancel the same as to extinguish the accrued rights of third parties without the assent of the latter." (quoting *Sawyer v. Sunset Mut. Life Ins. Co.*, 66 P.2d 641, 644 (Cal. 1937))); *see also Behr v. Blue Cross Hosp. Serv., Inc., of Mo.*, 715 S.W.2d 251, 253 (Mo. 1986) ("[T]o defeat

16

liability on an insurance contract, the termination of the policy must be effective before any liability attaches.").

Therefore, the Court grants summary judgment in favor of Plaintiffs on ASIC's unclean hands defense. The law on this issue is clear and any good faith effort by Van Ackeren would have demonstrated that there was no basis in law or fact for this defense.

### C. Misrepresentation

ASIC also asserts that the Herds' claims are barred by § 379.145, RSMo, and ASIC policy Condition 4, which void insurance policies procured by misrepresentation or concealment. Under Missouri law, the elements for fraudulent misrepresentation are: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his/her ignorance of the truth; (3) the speaker's intent that his/her representation should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on the representation being true; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately-caused injuries. *See Larabee v. Eichler*, __ S.W.3d __, 2007 WL 4300897, at *1 n.1 (Mo. App. 2007).

As a matter of law, ASIC's affirmative defense for misrepresentation fails because the Herds were unaware that ASIC had issued a forced-place insurance policy until after the fire occurred. There is no evidence that the Herds even knew about ASIC before the fire, let alone made any representation to ASIC upon which they intended ASIC to act. The only representations the Herds made were to EMC, which is not a party to this case. Further, the ASIC policy is with EMC; there is no evidence in the record suggesting the Herds made any

representations to ASIC for any purpose prior to the fire.  Thus, no reasonable jury could conclude that the Herds made misrepresentations to ASIC.  Summary judgment is granted to Plaintiffs on this defense.

## III.     Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Doc. # 110] is GRANTED in PART and DENIED in PART.  It is GRANTED as to Affirmative Defenses Numbers 13 and 14.  The Motion is otherwise DENIED.  It is further

ORDERED that Attorney Joseph L. Van Ackeren must pay Plaintiffs' attorney fees and expenses related to doing discovery and briefing on Affirmative Defenses Numbers 13 and 14.  Plaintiffs must submit a list of their attorneys fees and expenses within 15 days of this Order.  It is further

ORDERED that Defendant's Motion for Summary Judgment [Doc. # 134] is GRANTED against all of Plaintiffs' claims, based upon Affirmative Defense Number 6.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: February 19, 2008
Jefferson City, Missouri